May it please the Court, my name is Megan Hoffman. I'm with the Office of the Federal Public Defender of Nevada, and I'm appearing on behalf of Mr. Castillo. I would like to attempt to reserve three minutes of rebuttal. Got it. Thank you. Your Honor, it is our position that Mr. Castillo has made a prima facie showing that his claim relies on a new rule of constitutional law made retroactive that was previously unavailable to him. Prima facie is a low standard. It is not a standard in which we are determining today whether he would prevail on a claim under Miller v. Alabama. It is only a showing of whether there is possible merit to warrant further consideration by the district court of the ultimate issue of retroactivity, whether Miller applies. At this stage, he only needs to show that he has possible merit to warrant a fuller exploration by the district court. Let me ask you this. Do I understand correctly Miller dealt with a nondiscretionary life without parole sentence? Is that right? That is correct. And in the case here, it was not nondiscretionary. The judge had discretion. Well, Your Honor, that's not something that we have conceded at this point, but I wouldn't know. Is that true or not? It is true that the jury in this case, Mr. Castillo was sentenced by a jury, did have several sentencing options. And so the question is, how does Miller help you? Your Honor, it's our position, and I believe that Miller, Graham, and all of the subsequent cases that we have since cited stand for a broader proposition that Miller, yes, Miller did involve a mandatory sentencing scheme, although I will note that in the briefing and the Supreme Court noted in Miller v. Alabama that the Arkansas case, the companion case of Jackson, actually Arkansas argued it wasn't a mandatory sentencing scheme, and yet the Court nevertheless ruled on the issue as if it were a mandatory sentencing scheme. But that is a question that was put before the Supreme Court. But yours is not a mandatory scheme. In our case, I believe that Miller also stands for the proposition, and it's been repeated over and over in the cases that have interpreted Miller, that Miller requires that a sentencing court utilize its discretion in considering youth as a mitigating circumstance. And in this case, there's no question that youth was not considered mitigating. In fact, the State, in its closing argument, repeatedly argued to the jury that youth was an aggravating circumstance and that it compelled them to sentence for any sentence other than L.I.C.E. Breyer, that's their position. You argued it was mitigating, right? The judge didn't preclude you from arguing it was mitigating. No, there was no preclusion. You just had two sides of the story. They say it was, you say it wasn't. But there wasn't any proof in this case that it was actually considered to be a mitigating circumstance, that the jury even considered it as anything other than aggravating what the State presented to it. And in State v. Long, for example, a case out of Ohio, they concluded that even though the judge did consider that it wasn't a mandatory sentencing scheme, it was a discretionary sentencing scheme, and for that purpose, it didn't run afoul of Miller in that regard, but that it did, in fact, run afoul of Miller because the judge did not consider the defendant's age as a mitigating factor. And that's exactly what happened in this case. There is no evidence that the jury was ever told that the youth or that the age of the defendant or the accompanying characteristics of youth should be considered something that would lean in favor, perhaps, of non-youth. Didn't the Court have an opportunity to correct the attorneys for both sides at the penalty phase when they both argued the defendant's youthful age? One characterized it from the prosecutor's point of view that he's a young thug and he really just acted in complete disregard of everyone's safety. And then the defense attorney, when they talked about, well, this is a young man due to his immaturity and other characteristics that should be considered, the judge had an opportunity to correct that, and he said he had no need to respond to their arguments in that regard. Is it sufficient, then, to say that it was considered, given that set of facts? I don't believe that it is, Your Honor, under the cases that have interpreted Miller since Miller came down. From the cases that I cited coming out of California, out of Illinois or out of Iowa, out of Wyoming, out of Ohio in particular, those cases were similar to this particular situation in which, you're right, Your Honor, the judge did have an opportunity to correct what was presented to the jury and didn't do so. And the jury, you know, perhaps the judge might understand a little better the options that are before him and what discretion means and how to appropriately weigh mitigating versus aggravating circumstances. But in this case, it went to the jury without any sort of corrective instruction for them to really understand how to take that information. And he was able to do that. In this case, the record shows that at the sentencing hearing, after the jury's finding, the sentencing judge said he didn't think he had the authority to change the verdict, but he said in either event he wouldn't. Correct. And that, I believe, also strengthens our argument that, at the very least, we've made a prima facie showing that Miller does apply. The judge believes he didn't have any discretion to have instructed the jury otherwise, that he didn't have any opportunity to tell them that they needed to consider this evidence as mitigating rather than aggravating. And therefore, Mr. Cascio has never had that opportunity, which Miller requires, that before you sentence a juvenile to an LWOP sentence, you have to take these considerations into these factors into consideration. In other cases that I cited in my briefing, where the judge considered age but didn't consider it appropriately or perhaps considered it as something other than a mitigating circumstance, it was found to run afoul of Miller. I guess my problem is that, going back to what I said earlier about what was before the jury, what was before the court about his age, his immaturity, his conduct, both on the, I guess, the age side as a mitigation issue, that all the facts were there in the record to distinguish between his acts as a young offender as opposed to someone else, right? I don't believe they were, Your Honor. I believe in this case the entire closing argument of his defense counsel was two paragraphs. There was nothing to inform the jury that as a juvenile, as a 15-year-old, that he did not have the mental capacity to make rational decisions. There was no context placed for the jury to explain why a 15-year-old might have entered into this gang activity and might have found himself involved in the shooting. Kennedy. But the lawyer argued lack of opportunity, lack of hope. What else? Well, I think he did it in one sentence, Your Honor. And I think that there was much more that could have been presented here. We presented in our application that we would like to take back in the petition that there was extensive evidence here to show that his background influenced the reason that he entered a gang in the first place. All of those factors certainly lean towards a showing that Mr. Castillo should have had the jury be apprised of this information before it sentenced him to a life without parole sentence. And Roper, Graham, and the cases on which this case relied, Woodson, all of the death  he did not have the mental capacity to make rational decisions. And we require that, and that is what Miller requires and that's what Graham requires. If the Court doesn't have any more questions, I'll reserve my time. Counsel, Judge Gould, I've got a question for you. Help me out with the significance of the fact to get an SOS, you just need to show a prima facie case rather than that relief should be given. Your Honor, I believe that one of the cases that I found particularly instructive – there's not a lot of authority on this. I did try to find something in terms of what does it mean, what is the court instructed to do. And I would know that in the Eighth Circuit, the government has conceded retroactivity, but argued that in that particular case, it didn't apply, Graham or the relief in Miller did not apply to the defendant because he was not sentenced under a mandatory sentencing scheme. And the Eighth Circuit concluded that it was not an appropriate determination to make at this stage of the proceedings, that it was instead proper for the district court to actually determine whether or not Miller applied to the defendant, that the only thing that before the appellate court was whether he had made a prima facie showing that there was a new rule of constitutional law that has been made retroactive by the United States Supreme Court. And I believe we have shown that here in this case. Whether or not Miller actually applies to Mr. Castillo is something that warrants further factual development and should be done in the district court. And so you're not asking us to give you relief on the conviction. You're asking us to send it to the district court because you think you've shown enough to get it to the district court. I do believe that, yes, Your Honor. I'm having a hard time getting my mind around how we could agree with you and say that this case is, we have to take our marching orders from the Supreme Court, that we're bound to follow Miller when Miller deals with a mandatory sentence and this is not a mandatory sentence situation. I don't see how we get there from here. I do believe, Your Honor, that as I have demonstrated and submitted in the supplemental briefing, the application, the question of what mandatory sentencing means in terms of what Miller actually holds is not limited just to mandatory sentencing. It's limited to juveniles that face a possible LWOP sentence. And Miller actually requires that for every juvenile, and it makes clear that Graham is not crime specific, it's not penalty, it's not, it is penalty specific, but it's not crime specific, that every single defendant that is a juvenile that faces an LWOP sentence under Miller is entitled to an individualized sentencing determination. And Mr. Castillo has not provided that here. Nevada has not actually had an opportunity to determine whether or not Miller applies to it as a sentencing, as a mandatory sentencing scheme. And it's our position that the cases that have been submitted to it were done by pro se Petitioners that did not actually have briefings with Nevada Supreme Court or by a case where they didn't even cite Miller in the briefing. Therefore, this issue is actually before the Court. Mr. Castillo's case is before the Nevada Supreme Court on this very issue, and it's why I believe that this is an open question for the district court to resolve with further fact development. Roberts, say that again. What's before the Nevada Supreme Court? Mr. Castillo's, we filed a State successive application in State court to exhaust Miller grounds, should we be given permission to go back to the Federal District Court, and that case is pending before the Nevada Supreme Court right now. Why shouldn't we hold this in abeyance until we see what the Nevada Supreme Court does? If that's what this Court would like to do, I would not be opposed to that. But I do believe that in the meantime, I could also go back to the Federal District Court and ask them to hold it in abeyance until Nevada has resolved it, because even determining what Nevada rules on it, it's still a possible appealable issue to the Supreme Court about whether Nevada Supreme Court got it wrong. Thank you. Thank you, Ms. Hoffman. Good morning. Good morning. May it please the Court, my name is Jared Frost. I'm a deputy attorney general from Carson City, Nevada, and it is my pleasure to be representing the State parties in this case. Good morning, Judge Gould. I want to focus for a moment on this issue of whether this new rule in Miller has any applicability to Castillo, because I can tell the Court is interested in that particular issue. The Nevada Supreme Court has issued a number of unpublished decisions in which it has determined that Miller has no applicability to Nevada inmates because, as you've noted, Nevada has a discretionary sentencing scheme. And I also think it's important to point out that none of the cases cited by Mr. Miller apply to a state of Nevada or, indeed, a state which has a scheme with a comparable level of discretion. And so I think it is clear that none of these authorities really stand for the proposition that Miller applies in states like Nevada. It was only a few weeks ago in which the United States Supreme Court rejected, I think quite emphatically, the idea that Federal habeas petitioners can rely on and argue that that authority should be extended to address their particular circumstances. That was in the Whittle case. And for that reason, we, again, want to stress that Miller really does not provide a basis for relief in this case, and really doesn't deserve to go forward and ask for relief. But in cases like the, in the First Circuit, I believe, Evans-Garcia case, they found that Miller didn't apply because that jurisdiction had a discretionary sentencing scheme like here, but that the record showed the sentencing judge did consider, as a mitigating factor, the differences between youthfulness and, say, an adult. So isn't there a twofold aspect to this? Whether Miller applies is one question because of the discretionary sentencing scheme, but in application of that sentencing scheme and options, you still have to show something in the record that age and youthfulness was considered. Do we just assume that, or do we just require something else? Well, I think what Miller is concerned about and what Miller is addressing is whether this particular sentencing scheme precludes that type of argument, that type of presentation to the Court. What we have here is a situation where the defendant had the opportunity to present whatever mitigating evidence he wished to present on the issue of age or lack of maturity. There was nothing about Nevada's sentencing scheme. And what he did, he presented an allocution statement, and his attorney made an argument from that. That's correct, Your Honor. And so, yes, that opportunity was provided to Mr. Castillo. There's nothing in Miller that would require some additional process or that the jury be provided with any particular instruction. What Miller requires is that there was that there's a – that there's this opportunity to present this type of evidence. So just the jury's knowledge that it had these options was sufficient to satisfy constitutional concerns? That, Your Honor, and the discretion that the senator had in choosing an option other than life without the possibility of parole. All right. Let me ask you a question, if I may, Mr. Frost. Do I understand correctly that Castillo is serving two consecutive life sentences? I believe that's correct, Your Honor. Now, as I understand it, the first sentence is discretionary with the jury. They could have given him a life with parole, a life without parole, and so forth. Right? Correct. And my impression from reading NRS 193.165 that the second sentence for use of a firearm is mandatory. If he is sentenced to life without parole on the first one, he must be sentenced to a second identical term to be consecutive to the first one. Is that – do I understand Nevada law right? Your Honor, I have not looked closely at that issue and, unfortunately, I have not had an opportunity to brief that particular issue. If that's right, I mean, if I'm reading this correctly, then there is a mandatory element to at least the second sentence, isn't there? If that indeed is a correct statement of Nevada law, yes, that would be an issue, Your Honor. So while I can't confirm whether that is the case, I think it's also important to recognize that there are at least two other reasons why Mr. Castillo's application should be denied. And the first one of those is that this claim has already been presented in a prior Federal petition. In Mr. Castillo's July 2005 Second Amendment Federal habeas petition, he raised the following claim. He asserted, quote, two consecutive sentences of life without the possibility of parole imposed on a 15-year-old for murder constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution, unquote. And they went on to argue that these sentences were grossly disproportionate to his crime, and that considering his age at the time of incident. Now, compare this claim with the claim he proposes to raise in his successive petition. They are based on the same facts, his age at the time of shooting, and based on the same legal theory, the Eighth Amendment proportionality review. And while the new claim does provide new legal argument based on this case, Miller v. Alabama, this Court construed successive grounds broadly in Babbitt when it said that a grounds is successive regardless of whether there are new and different legal arguments presented in support of that ground. And, again, Section 2244b1, that first subsection, is a mandatory dismissal provision that has no exceptions. And it is our position that if this Court does determine that that claim was presented in that earlier petition, it must deny the application. There's yet to be a verdict. Yes, Your Honor. I think Judge Gould, if I could, you know, why isn't the earlier claim somewhat different? Because although it's based on proportionality, you know, it didn't have Miller. So it wasn't really a question, does Miller, which gave this belief, apply retroactively? Does Miller apply to this type of scheme or to what the judge did here? Does Miller apply retroactively? Why isn't that a different issue? Right, Your Honor. Thank you for that question. You know, it can be difficult to determine exactly what is a new claim. What I think is critical here is to look at the language in Babbitt in which this Court, as I mentioned, broadly construed what a successive ground is. And, you know, it talks about is the basic claim supported by new and different legal arguments. It talks about a basic claim, the same legal gravamen. And I think that here we have that level of similarity in which we really essentially do have the same claim with additional legal argument that's provided in support of that claim. It should be dismissed under the first subsection of 2244B. Do you have a view on the question I asked Ms. Hoffman about holding the case in abeyance until the Nevada Supreme Court does its thing? Your Honor, we would prefer that you rule on the issue now. As I've mentioned, the Nevada Supreme Court has already determined in three unpublished decisions that Miller has no retroactive or no applicability to Nevada inmates. Three unpublished decisions of what? The Nevada Supreme Court? That's correct, Your Honor. And those are cited in my supplemental response. No published opinion from the Nevada Supreme Court? Not to my knowledge. But was the rationale for not applying Miller by the Nevada Supreme Court based upon findings that the sentencing judge or jury were presented with, the mitigating factors about youthfulness and differences with adults? Your Honor, what I recall from those cases is that the Nevada Supreme Court was focused on Nevada's discretionary sentencing scheme. And so like states like Florida and at least one other state case cited in the briefs that said we have to set discretionary sentencing schemes. For that reason, Miller does not apply in our state. Would the state be prejudiced in any way if we held it in abeyance? No, Your Honor. I don't believe so. So it looks like I'm just about at the end of my time here. So what I want to emphasize here in closing is that at some point, someday the Supreme Court may determine that Miller applies to states like Nevada with discretionary sentencing schemes. And at some point it may make an express holding of retroactivity, but it has not done so yet. And for that reason, the state's request of this case be denied. Thank you. Thank you, Mr. Frost. Ms. Hoffman, you're actually over your time. And if you'd like to take a minute for rebuttal, we'll do that. Thank you, Your Honor. Hang on a second. Let's just get the minute. There we go. Okay. You're up. Okay. Thank you. Just very briefly, Your Honor is correct in terms of Nevada's mandatory sentencing scheme. At the time that Mr. Castillo was sentenced, it was a mandatory equal and consecutive sentence for the enhancement, whether it was for the gang or the weapon enhancement. So if the jury sentenced him to life without parole, the enhancement was a mandatory life without parole enhancement. As for the prior petition claim, Your Honor, I believe that I addressed that in the briefing. But I will note that the district court in dismissing the Eighth Amendment claim noted that Mr. Castillo presented no legal authority that life without parole is cruel and unusual punishment for a 15-year-old. And that was the reason that that claim was denied. Miller, since this has come along, it is a new claim. It is the first time that Mr. Castillo has ever been able to argue that, yes, indeed, there is a constitutional requirement that mandatory L.L.O.G. for juveniles is unconstitutional. If we agree with you, what does our order say? Do we define the issue to be appealed the way we would in the certificate of appealability? Or do we just say you can file one and leave it? Your Honor, I believe that you can do any of those options. The second and fourth circuits merely said that he's made a prima facie showing and remanded it to the district court. Some of the other circuits, like the Eighth and the Third Circuit, did a more lengthy ruling. But I do think that the only thing that needs to be said is that under 2244B, he's made a prima facie showing and can be remanded. Of what? Prima facie showing of what? A prima facie showing that Miller is real or is a new rule of constitutional law that has been held retroactive by the Supreme Court. Lastly, Your Honor, just in terms of the cases that Nevada has addressed, as I noted, two of those cases were pro se appeals in which no briefing was submitted to the court. One of them, briefing was submitted, but the defendant, the Petitioner, never actually addressed Miller. And in two of those three cases, the Nevada Supreme Court did note that youth was considered as a sentencing factor in those particular cases. If Your Honors would like those briefings, I'd be happy to provide them after argument. Thank you, Mr. Frost. Thank you. Thank you. The case that's argued is submitted.
judges: Lemelle, Silverman, Gould